**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Money LANOS, Defendant/Appellant.**

No. ED 75693.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 28, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 7, 2000.

Application for Transfer Denied
April 25, 2000.

113 L.Ed.2d 411, I agree with Justice Kennedy's majority opinion in *Powers*.

Jason Steven Marks, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Krista D. Boston, Asst. Atty. Gen., Jefferson City, for respondent.

SHERRI B. SULLIVAN, Judge.

Appellant Money Lanos ("Appellant") appeals from a judgment of conviction on four counts of Robbery in the First Degree and one count of Robbery in the Second Degree. We affirm.

Viewed in the light most favorable to the verdict, the evidence established the following facts. On the night of March 18, 1997, Thomas Rund ("Rund"), a detective with the City of St. Louis Police Department, arrested Appellant for a misdemeanor capias warrant. At the time of his arrest, Rund verbally advised Appellant of his *Miranda* rights. Appellant indicated he understood those rights, and he did not ask for a lawyer.

After arriving at the police station, Rund informed Appellant about an investigation concerning five robberies occurring near the area in which Appellant was arrested. In particular, Rund questioned Appellant for about ten minutes regarding a robbery occurring the night before involving a victim named Bridgette Sinar ("Sinar"). Appellant stated that he did approach a woman at the robbery location and ask her for some money.

Subsequently, Rund contacted Sinar to request her presence at the police station to view a physical lineup. Rund selected four individuals with a similar description as Appellant who were already incarcerated in a holdover to participate in the lineup with Appellant. Rund informed Sinar that she would see five individuals in the lineup, and if she recognized one of the individuals as the person who approached her during the robbery in question, she should identify the individual by an assigned number.

Prior to the lineup, Rund advised Appellant that he was going to be placed in the lineup. At this time, approximately 1:30 a.m., Appellant provided Rund with the name of an attorney whom he requested Rund contact. Rund attempted to contact the attorney prior to the lineup, but he was unsuccessful. Later in the morning,

after the lineup, Rund left a message with the attorney's secretary.

Initially, Appellant refused to stand up for the lineup, even after he was requested to do so. Thus, two officers brought Appellant to his feet, and during the lineup, they stood behind Appellant so that he could be viewed. Sinar identified Appellant as her assailant.

Following Sinar's identification of Appellant in the lineup, Rund again advised Appellant of his *Miranda* rights. Appellant completed a warning and waiver form, indicating that he understood and waived those rights. Appellant did not ask for a lawyer at this time. Part of the warning and waiver form included a written statement by Appellant confessing to the robberies. Appellant signed the form, which was dated March 19, 1997, at 2:30 a.m. No threats or promises were made to Appellant for completing this statement.

Subsequently, Rund conducted lineups for each of the other robbery victims, each of whom identified Appellant as their assailant.

In April 1997, a grand jury indicted Appellant on five counts of Robbery in the First Degree, a class A felony, in violation of section 569.020.[1] Subsequently, the State of Missouri ("Respondent") entered a dismissal nolle prosequi. In July 1998, another grand jury indicted Appellant on the same charges as in the prior case. All of the pretrial motions that had been heard and ruled upon by the trial court in the prior case were accepted by the trial court in this case. Included in these pretrial motions were Appellant's Motion to Suppress Statements and Motion to Suppress Identification, both of which were denied after a hearing.

After a three-day trial, a jury returned a verdict finding Appellant guilty of four counts of Robbery in the First Degree and one count of Robbery in the Second Degree, a class B felony, in violation of section 569.030. Appellant filed a Motion for Judgment of Acquittal, or in the alternative, Motion for a New Trial, which was denied after a hearing. The trial court entered a judgment and sentenced Appellant, as a prior and persistent offender, to fifteen years of imprisonment for each of the four counts of Robbery in the First Degree and ten years of imprisonment for the count of Robbery in the Second Degree, with all counts to run consecutively, for a total of seventy years in the Department of Corrections.

■■■ This Court will affirm the trial court's ruling on a motion to suppress unless it is clearly erroneous. *State v. Heyer*, 962 S.W.2d 401, 405 (Mo.App. E.D. 1998). If the ruling is plausible, in light of the record viewed in its entirety, we will not reverse, even if we would have weighed the evidence differently. *Id.* We review the factual findings only to determine if they are supported by substantial evidence, viewing the facts in the light most favorable to the trial court's ruling and disregarding contrary evidence and inferences. *Id.* We give deference to the trial court in judging the credibility of the witnesses. *Id.* at 408.

■■■ Appellant's point one on appeal argues that the trial court erred in denying his pretrial Motion to Suppress Statements and receiving into evidence, over objection of defense counsel, Appellant's entire written statement given to Rund on March 19, 1997, because the police procured the statement in violation of Appellant's right to counsel guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 18, and 19 of the Missouri Constitution. Once a defendant has challenged the admissibility of a statement or confession made while in police custody, the burden is on the state to demonstrate that its procurement comported with controlling constitutional requirements. *State v. Oldham*, 618 S.W.2d 647, 648 (Mo. banc 1981).

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

■ The Fifth Amendment prohibition against compelled self-incrimination, applicable to the states through the Fourteenth Amendment, provides an accused the right to have counsel present during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Reese*, 795 S.W.2d 69, 72 (Mo. banc 1990).[2] If an accused expresses his or her desire to have an attorney, the interrogation must cease until an attorney is present. *Miranda*, 384 U.S. at 474, 86 S.Ct. 1602; *Reese*, 795 S.W.2d at 72. However, even if an accused invokes the right to counsel, a waiver can be established by showing that the accused initiated further communication, exchanges or conversations with the police, but not by showing that the accused responded to further police-initiated custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *State v. Cooks*, 861 S.W.2d 769, 771 (Mo.App. E.D.1993).

■ Determining whether the right to counsel has been violated during a custodial interrogation requires a two-step analysis. *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). First, we must determine whether an accused invoked his or her right to counsel. *Smith*, 469 U.S. at 95, 105 S.Ct. 490; *Reese*, 795 S.W.2d at 72. Second, if an accused invoked his or her right to counsel, we must determine whether the accused knowingly, voluntarily, and intelligently waived the previously invoked right to counsel. *Smith*, 469 U.S. at 95, 105 S.Ct. 490.

■ To invoke the right to counsel, an accused must make an unambiguous and specific request for counsel in dealing with a custodial interrogation. *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *Cooks*, 861 S.W.2d. at 771. The question of whether an accused has invoked the right to counsel is objective. *Davis*, 512 U.S. at 459, 114 S.Ct. 2350. An accused must articulate his or her desire to have counsel present sufficiently clearly that a reasonable police officer, in the circumstances, would understand the statement to be a request for an attorney. *Id.*

■ Appellant did not invoke his right to counsel. A summary of the relevant events is explicative. First, at the time of Appellant's arrest, Rund verbally advised Appellant of his *Miranda* rights. Appellant indicated he understood those rights, and he did not ask for a lawyer. When questioned at this time, Appellant orally confessed to the Sinar robbery. Second, during a break in custodial interrogation and in response to Rund advising Appellant that he was going to be placed in a lineup, Appellant provided Rund with the name of an attorney whom he requested Rund contact. Appellant does not have a Fifth Amendment right to counsel at a pre-charge lineup. *State v. Quinn*, 594 S.W.2d 599, 604 (Mo. banc 1980). Third, upon resuming custodial interrogation following Sinar's identification of Appellant in the lineup, Rund again advised Appellant of his *Miranda* rights. Appellant also completed a warning and waiver form, indicating that he understood and waived those rights. Although Appellant testified that he requested an attorney at this time, the trial court implicitly rejected this testimony in light of other evidence to the contrary. Part of the warning and waiver form included the written statement by Appellant confessing to the robberies. No threats or promises were made to Appellant for completing this statement.

Because Appellant did not make an unambiguous and specific request for counsel in dealing with a custodial interrogation, he did not invoke his right to counsel, and no further analysis is required. Accordingly, the trial court did not clearly err in

2. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602.

denying Appellant's Motion to Suppress his written statement. Point one is denied.

■ Appellant's point two on appeal argues that the trial court erred in denying his pretrial Motion to Suppress Identification and receiving into evidence, over objection of defense counsel, the out-of-court identification of Appellant by Sinar and her subsequent in-court identification of Appellant because the out-of-court identification was so impermissibly suggestive as to render a substantial likelihood of irreparable misidentification, tainting the in-court identification. Appellant contends that the use of both identifications at trial violated his due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18 of the Missouri Constitution.

■ Determining the admissibility of identification testimony resulting from allegedly suggestive pretrial identification procedures requires a two-step analysis. *State v. Hoopingarner,* 845 S.W.2d 89, 93 (Mo.App. E.D.1993). First, we must determine whether the procedure was suggestive. *Id.* Second, if the procedure was suggestive, we must determine whether the procedure made the identification unreliable. *Id.* Reliability, rather than suggestiveness, is the linchpin in determining the admissibility of identification testimony. *Id.* Identification testimony is admissible unless it resulted from pretrial identification procedures that were unnecessarily suggestive and conducive to irreparable misidentification. *Id.* A procedure is unnecessarily suggestive if the identification results not from the witness' recall of firsthand observations, but rather from the procedures or actions employed by the police. *State v. Glover,* 951 S.W.2d 359, 362 (Mo.App. W.D.1997).

■ Appellant argues that the pretrial identification procedure was unnecessarily suggestive because two officers stood behind Appellant during the lineup. However, Appellant cannot challenge the suggestiveness of a lineup due to circumstances that he caused to become necessary. *State v. Kirk,* 636 S.W.2d 952, 955 (Mo.1982). Appellant refused to stand during the lineup, necessitating the officers' positions. Thus, the pretrial identification procedures were not unnecessarily suggestive, and no further analysis is required.

Accordingly, the trial court did not clearly err in denying Appellant's Motion to Suppress Identification. Point two is denied.

■ Appellant's point three on appeal argues that the trial court erred in allowing Respondent to introduce in its case-in-chief, and reference in opening statement and closing argument, evidence of other crimes committed by Appellant, specifically that he was an illicit drug user and was wanted on an outstanding warrant at the time of his arrest. Appellant contends that this evidence denied him due process and a fair trial guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 18, and 19 of the Missouri Constitution.

■ Appellant's point three argues two allegations of error. First, Appellant alleges that the trial court erred in denying Appellant's request for a mistrial following the introduction of Appellant's capias warrant into evidence during Rund's direct examination because such evidence constitutes impermissible evidence of other crimes. A trial court is required to grant a mistrial only if there is a grievous prejudicial error that cannot be remedied. *State v. Winston,* 959 S.W.2d 874, 878 (Mo. App. E.D.1997). Because the trial court is in a much better position to determine the prejudicial effects from the alleged error, we will affirm its decision denying a motion for a mistrial unless that decision constitutes an abuse of discretion. *Id.*

The introduction of Appellant's capias warrant into evidence occurred in the following manner:

Prosecutor: And what rights is [Appellant] advised of?

Rund: I formed [sic] him that he was under arrest for the charge of, that he was also, he was wanted for a capias warrant-

Defense Counsel: Your Honor, I object.

The Court: Objection is sustained. The jury is instructed to disregard the witness' last statement.

The trial court does not abuse its discretion in denying a motion for a mistrial if the alleged improper remarks are a vague and indefinite reference to an unspecified crime. *Id.* Rund never referred to a specific crime that Appellant may have committed, and thus his comment was, at most, a vague and indefinite reference to an unspecified crime. Further, the court promptly sustained defense counsel's objection and instructed the jury to disregard the statement. Therefore, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

Appellant's second allegation of error argued in his point three on appeal is that the trial court plainly erred in admitting evidence regarding Appellant's illicit drug use because such evidence constitutes impermissible evidence of other crimes. Appellant did not object to the admission of the evidence based on this ground during trial, and Appellant did not include the allegation of error in his Motion for a New Trial. Thus, as Appellant acknowledges, Appellant did not preserve the issue for appellate review. *State v. Rousan,* 961 S.W.2d 831, 842 (Mo. banc 1998).

Reviewing an unpreserved issue for plain error is within the discretion of this Court. *State v. Boyd,* 992 S.W.2d 213, 219 (Mo.App. E.D.1999). Plain error review is to be used sparingly and only if a manifest injustice or a miscarriage of justice will occur if the error is not corrected. *State v. Knese,* 985 S.W.2d 759, 770 (Mo.

banc 1999). Appellant has not raised any issues for which he is entitled to plain error review. Thus, the trial court did not err in admitting evidence of other misconduct by Appellant. Point three is denied.

Accordingly, the judgment of conviction and sentence of the trial court is affirmed.

CRANE, P.J. and ROBERT G. DOWD, Jr. J., concur.